## Mackay-Nisbet Company v. F. H. Kuhlman.

1. Change of ownership—*when, will not defeat recovery.* Where goods have been sold to a person running a business under the supposition that no change in the ownership thereof has taken place, a recovery on account thereof will not be defeated merely because of such a change where made without public notice and without apparent change in the subsequent management of the business.

2. Change of ownership—*what not notice of.* A statement made to a traveling salesman, not purporting to be a general agent, that a change of ownership has taken place, is not notice to the employer of such salesman selling goods in reliance upon no change of ownership.

3. Promise—*when, inures to the benefit of a third party.* Where one receives a valuable consideration for a promise made to one person for the benefit of a third person, such third person may enforce the promise.

Action of assumpsit. Appeal from the Circuit Court of Massac County; the Hon. William N. Butler, Judge, presiding. Heard in this court at the August term, 1904. Reversed and remanded. Opinion filed March 17, 1905.

C. M. FOUTS, for appellant.

LANNES P. OAKES, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit in assumpsit, in the Circuit Court of Massac county, by appellant against appellee, to recover for goods, wares and merchandise sold and delivered. Trial by jury. Verdict and judgment in favor of appellee for costs.

Prior to 1894, one Phillip Clark had owned and conducted in his own name, a general store in the village of Hamletsburg, Illinois. In 1894, Clark failed in business and appellee took possession of the store and became the owner of it and advertised and conducted the business in his own name, but left Clark in charge of the store as clerk and manager of the business. From that time on until after the goods for which recovery in this suit is sought, were sold and delivered, every feature of the business was conducted and carried on in the name of appellee, with Clark in charge. Appellee's name in big letters remained upon the front window; envelopes and letters heads, with appellee's name on were in use; all goods were ordered, marked and shipped in the name of appellee, and all bills payable were made out against him and notes were given and payments were made in his name. Clark testifies that all this was authorized by appellee, while appellee testifies that after August 9, 1899, it was not authorized. However this may be, it is clear from the evidence that the business was openly so conducted and that appellee knew it, or by proper diligence would have known it. During this time, both before and after August 9, 1899, many invoices of goods were purchased from appellant.

On October 8, 1901, appellee took personal charge of the store, and sold it to a Mr. Vickers. At that time there were outstanding bills payable, aggregating more than $3,000, and among them was the one in question in this suit,

amounting to the sum of $449, evidenced by two promissory notes executed in the name of appellee, and a balance on account. It appears that appellee has since paid all these bills, except the one due appellant.

The only defense interposed to appellant's bill is that on August 9, 1899, appellee made a bill of sale to Clark. It is not claimed that any public notice of any kind was given of this transaction, nor that there was any change thereafter in the management or manner of conducting the business.

Concerning the bill of sale, Clark testifies as follows: "I became insolvent in 1893 or 1894. F. H. Kuhlman took possession of the store and became the owner of it. I clerked for him and managed his business all along. He authorized me to purchase goods on his credit and account and I did so. I purchased on his credit from various wholesale houses. I purchased quite a great deal on his credit with his knowledge and consent from the plaintiff, Mackey-Nisbet & Co. In 1899 Mr. Kuhlman, the defendant, made me what he called a bill of sale for the store. It was not recorded. I never notified Mackey-Nisbet & Co. about it. After I got the bill of sale I owed Mr. Kuhlman for the store, and I told him he knew I was insolvent and could not run the store in my name, and he then authorized me to continue to run the store in his name and buy goods on his credit which I did as well from the plaintiff, as various other wholesale houses. In 1901 or 1902, Mr. Kuhlman took personal charge of the store, and in a short time after sold it to Samp Vickers. When he took possession of it last, I told him about the debts of the store and he agreed to pay them. He did pay something like $3,300 of the debts. I told him about the debt due plaintiff at that time."

Appellee denies no part of Clark's evidence, above noted, except he says he did not authorize Clark to use his name and buy goods on his credit.

During the progress of the trial the court, over objection of appellant, permitted appellee to testify, that a short time

Mackay-Nisbet Co. v. Kuhlman.

after August 9, 1899, he told A. H. Stoermer, a traveling salesman of appellant, in a saloon at Metropolis, that "he had sold out his store at Hamletsburg to Phillip Clark, was out of it and had nothing more to do with it." The evidence does not prove that Stoermer was a general agent of appellant, nor that appellant so held him out. It is true that Stoermer was at the time mentioned a traveling salesman for appellant, but Hamletsburg was not in his territory at that time, nor at any time after that. Stoermer had no authority whatever with respect to the business of appellant which was being transacted with this store at Hamletsburg, and further the statement made to Stoermer, in the saloon at Metropolis, if such statement was in fact made, was not made in connection with any business transacion of any kind, was neither within the scope nor apparent scope of Stoermer's agency, nor is it claimed that the statement was made for the purpose of giving notice to appellant of the fact, and the evidence conclusively proves that no such information was communicated to appellant, and that it had no such notice, but on the contrary its agent, who had authority to transact business at Hamletsburg was assured by Clark, who was openly conducting the business in appellee's name, with his knowledge, that the store and business belonged to appellee.

The trial court erred in admitting in evidence the statement claimed to have been made to Stoermer, and in giving the second, third, fourth and sixth instructions, on behalf of appellee.

In addition to the foregoing the undisputed evidence is, that when Clark allowed appellee to take the store back he informed appellee of all the indebtedness, including that to appellant, and appellee agreed to pay it. The turning back of the store by Clark to appellee, was a valuable consideration for this promise on the part of appellee to pay these debts, and this promise inures to each of the creditors, respectively.

Plaintiff's evidence establishes a *prima facie* case in its

favor, and there is no relevant and proper evidence in the record tending to prove any valid defense.

The judgment of the Circuit Court is reversed and the cause is remanded.

*Reversed and remanded.*